More frequently, it pleases the court, Kevin Green for the appellant, Sherry Poe, and I'd like to reserve five minutes for rebuttals. Keep an eye on the clock. This is a breach of contract case, and as such, it's vital to focus on the theory of breach, and whether that is both factually and legally viable, individually, and class-wide. And there are three simple links in the logic chain here on the theory of breach and the nature of breach, and if Northwestern Mutual has a response to it, I didn't see it in the appellate briefs. The designation notices were not sent to Mr. Poe or the other class members, it is alleged. Therefore, under the statutes, the policies did not lapse. They remained in force as a protective measure and as an incentive for compliance. So those were in force when Mr. Poe passed away, and that triggered the insurer's duty to perform under the policy and pay death benefits. And so, in that respect, it's a straightforward case, and just without ignoring the 800-pound gorilla in the room and the small decision, that was not an issue in small. Small is just a different case. It's about whether, in two critical respects, whether the argument there, the theory, was that the breach was a violation of the statutes, and did that cause harm? Like, say, if you word search the word violation in a small opinion, it comes up 10 or 11 times. This is said over and over. And the theory I just described to you was not addressed in small, certainly not decided there. And why are those cases so fundamentally different? Well, there's no ongoing contractual relationship here. It's just simply a B3 damages class, looking back entirely retrospectively, whereas a lot of the other cases involve living insurance that are seeking policy reinstatement and some issues that arise in that respect that impact, potentially, class certification. But sometimes we can't really tell what a decision means and the effect it has until you apply it to the next case, and that's where we are now. And so small, in that respect, doesn't control or direct a different outcome here. And I'm happy to go through the record on what would a B3 damages class look like here in light of setting the table in that way. And in that respect, the class is defined, and this is at 1ER4, to exclude people who intentionally canceled in writing, who canceled in writing, and only those who were terminated for nonpayment of premium. And this is a point that, looking back on the briefs, we might have had just with a slightly more emphasis because the class list, terminations for nonpayment of premium at ER398 is based on a list generated by Northwestern Mutual because they have a transaction code that allows them to isolate everyone who was terminated for nonpayment of premium as opposed to those who wrote in and might have canceled. So we know who those people are, and they're protected by the scope of the statute, by the plain language of it. But so maybe even, I'm not trying to understand your theory of why, how it is that under small, all of those people have a claim as opposed to the subset of those people who can show that compliance with the statute would have caused them to pay the premiums and retain the policy. Well, in this case, it doesn't distinguish between, say, intentional lapsers, and the class is defined, again, as a matter of those who were terminated for nonpayment of premium. But small says that's not enough, right? You can't, forgetting the class angle for a minute, an individual plaintiff who comes in and says, you failed to comply with the statute, I'm giving you notice, and I was terminated for nonpayment. If that's all you say, small says that that's insufficient, right? Small says that's insufficient, but again, that's not our case. The breach is, and this goes back to the motion to certify, which I think, because that's distinct from small, is even more important than it was before, because that was filed before small was decided. So if the breach is the failure to pay the benefits on policies still in force, then it covers everybody within this class. None of these people are intentionally canceled in writing. Now, that's not exactly the same as intentional lapsers, but another point of the record that I think is important, Northwestern Mutual put in all these communications with these very people, and there's nothing in there showing that anybody deliberately or intentionally lapsed. Like, send me the forms, or I'm thinking about doing it, and so they haven't made that case. And so this term intentional lapse has really gotten some traction in these cases, and I think it's a little misleading, at least in a case with this kind of record, where the company knows it was terminated for nonpayment of premium because they keep track of these things. They have records on all of that, so they know exactly. The statute does protect people who, as a matter of, and granted its term life insurance that some people might not have wanted it. But a notice statute is always going to be a little overbroad from what it is meant to cover. Like, say, a speed limit on the freeway is 65. Some people don't need that because they drive slow. Overbroad in the sense that it protects even people for whom the notice wouldn't have made a difference. It protects everybody covered by the notice. Maybe I'm dismissing something you're doing. Small says it doesn't. It doesn't, I'll go ahead. Well, it says that on a theory of violation only, that people who intentionally lapsed on the record in that case cannot show that the violations caused them harm. And, again, that is not the theory of breach here. It's the failure to pay the death benefits. So that's. They didn't pay the benefits because they thought the policy had lapsed. What's the difference? Well, the policy did not lapse as a matter of law under the statutes. And so the policies were made in force all along. Those are the anti-lapse provisions that are also familiar in other California cases. This is a very confusing case. You are representing the plaintiffs, correct? Yes. And you are appealing what? The denial of class certification. Correct, Your Honor. And the court eventually granted you summary judgment.  And you're arguing on appeal that the class certification denial was wrong because all of the plaintiffs were subject to that statute and their policies did not lapse, is that correct? Yes. I'm with you so far. Okay. So what do you say with respect to the district court's judgment granting you summary judgment? Well, I think it's proper because, again, if the court accepts the premise that this case just involves a different breach of contract than Small was about and that in Small there was a B3 class, but there's nothing in Small that addresses or disagrees with the theory of breach that this case has always been about. Well, I guess I'm just not quite sure I am understanding why the breach is different here. Well, the violation of the statutes, the statutes are incorporated into the contract as a matter of law, right, under insurance principles. So the violation of the statutes is part of the contract. That meant the Northwestern Mutual was required to send the notices that they didn't send to people. And that was the theory that the plaintiffs were arguing in Small, right? Correct. Part of it, yeah. But it was violations of the statutes only and not that the breach occurred due to the failure to pay death benefits, which is the insurer's, of course, principal obligation under a life insurance policy. I see. So you're distinguishing on the grounds that here the breach was the failure to pay the benefits, and in Small the breach was failure to comply with the statutes. Violations of the statutes causing harm or causing the breach. That's said about eight or ten times in that opinion, without addressing the theory that I'm describing to you now. So in that respect, it does not control the outcome of this case. Do you have a theory of why or how the, I mean, so let me put it this way. The district court's analysis in the class certification order and its analysis in the summary judgment order struck me as very difficult to reconcile. Do you have a theory of what's going on in those two orders? Or did the district court give a theory? I think everybody here can agree, at least on that much. Those two things are at odds. But did the district court ever recognize that there was an inconsistency? I don't know that it did expressly. But I think what it did was give the statutes a careful study. And, yes, there is some confusion here. And I think that it stems in part from the statutes being enacted saying that these notices and grace periods have to be given. But without the legislature looking at, well, how does that play in terms of common law causes of action and enforcement? The district court, I think, took a good look at this and decided that its initial analysis was incorrect. And I think the key provision in that link, and I think it's in the summary judgment order, as well as the transcript on summary judgment, is the antitrust provision. And by that I mean that if the notices aren't sent, if Mr. Poe didn't receive the right to designate a third party such as his wife, Sherry Poe, to receive notices and pay premium, then the statute remains or the policies remain enforced by virtue of that provision. And that's as a matter of law. And I have another major point. I haven't heard a good response from the other side on what's wrong with that. I mean, the statute is very clear. And so we're talking about enforced policies that are enforced like any others and therefore trigger the insurer's obligations. You wanted to reserve some time. Yes, please. Thank you. Mr. O'Driscoll. Yes, good morning. Your Honors, Tim O'Driscoll for the Northwestern Mutual Life Insurance Company. Small is indeed dispositive of this appeal and cross-appeal. In Small, the court decided that strict compliance theory, that is, that any violation of the statute's results in the policy staying in force and therefore the policy is breached when the insurer does not pay the debt benefits, was incorrect. That was the Thomas decision. The Small court specifically discussed the Thomas decision statement in that regard and said that it declined to adhere to it. That was our court's memorandum disposition. That's correct, Your Honor. It was also the basis for the Small District Court's decision. As we cited at page 4 of our supplemental brief, following Small, the Small District Court followed Thomas. And Small, in a very exhaustive opinion, the court in Small, this court in Small, decided that Thomas was not to be followed and that the Small District Court was incorrect in following the strict compliance theory. That is plaintiff's theory. Plaintiff's main support has always been, in this case, the Thomas decision. The court in Small also, as Your Honors are well aware, specifically adopted the causation theory, which is what Northwestern Mutual has been arguing all along, that the violation of the statute's needs to cause the harm. There is no private right of action in the statutes. The statutes are incorporated in the contract, and that means that the plaintiff needs to show that the violation of the statutes caused the harm. And because that is so, the Small court said, the plaintiff needs to show that the policy owner did not intentionally lapse the policy because if the policy owner intentionally lapsed the policy, then that was the cause of the harm. It didn't matter whether a notice was sent under the statutes or not. And the court further said in Small that because the plaintiff needs to show that the lapse was not intentional, that it is clear that determining whether the policy owner intentionally lapsed or not is an individualized inquiry that cannot be determined on a class basis. Well, the plaintiff says this case is different because here they're claiming that the failure to pay was the breach, not the failure to comply with the statute. So what is your response to that? Well, the Small court said that that was incorrect. The Small court, that was the Thomas statement, the statement in the Thomas disposition to that effect, that the Small plaintiff and the Small district court, and this plaintiff in this case has relied on all along to say that the policy remains in force automatically, and therefore the breach is not paying the death benefits. And Small, this court in Small very clearly said that that's not correct, that the violation of the statutes needs to cause the harm. And if the lapse of the policy was intentional, then that can't be done. That was the theory of the plaintiff seeing Small as well as here, is that what you're saying? Yes, that was the district court adopted, that was the basis of the district court's decision relying on Thomas. What can you do to say to your friend on the other side's argument that here the class excludes individuals who, I mean, in fact, that your client is able to determine which people never, you know, didn't intentionally lapse by not selecting or informing the company that they were not going to be renewing or paying? Yes, Your Honor, several things in that regard. First of all, in no particular order, but first of all, the policies, in this case the PO policy, for example, expressly states that the only thing the policies state about termination is that if the policy owner stops paying premium payments, the policy will terminate. So as the Small court also recognized commonly, commonly, the way that policy owners intentionally decide to lapse their policies is simply by stopping paying premium. That's also in our declaration that I'll talk about in a minute, but the Small court expressly said that. So the information as to whether a termination is intentional or not is not always or even usually going to be in the possession of the insurer. Under Small, that is for the plaintiff to prove. So the fact that this punitive class excludes written terminations is neither here nor there. The policies say nothing about written terminations, and the Small decision specifically said that commonly insurers simply do not, policy owners simply do not pay premium when they want to intentionally lapse. The intentional lapse is the heart of the Small, this court's decision in Small. Okay. Again, going back to the procedural posture here. Yes. You have not cross-appealed. Yes, we have cross-appealed, Your Honor, and I wanted to. I heard what you said, of course, and it is. It is not labeled as. Okay. So the plaintiff in this case did appeal the denial of class certification. Northwestern Mutual did cross-appeal the court's subsequent grant of summary judgment. So that is before this court, and that needs to be reversed or vacated because the chronology was this, Your Honor. The district court in this case correctly, as Small actually mentioned, the district court's decision on class certification and the motion for reconsideration thereof several times in the Small decision and as directly adopting the causation theory. Subsequently, on summary judgment, individual summary judgment, the court very clearly adopted, I think expressly adopted, the strict compliance theory, citing Thomas. And the reason was not stated at that time to answer Your Honor's previous question, but it was actually addressed by the district court judge subsequently in an opinion called Lee v. Great American Life Insurance Company. And in that opinion, same judge, Judge Garnett, she briefly alluded to that words to the effect that she had decided that the strict compliance view was the better view. And the Small decision has shown that that was incorrect, and Judge Garnett was actually right the first two times when she denied class certification and when she denied the motion for reconsideration. Was there a motion to reconsider the summary judgment? Yeah, I'm sorry, I did not mean to confuse things further, Your Honor, but there was a motion by the plaintiff to reconsider the class certification decision. But with respect to the Lee decision by the district court judge in this case, that was entered last August, I believe, and that decision is currently on appeal, but this court in Small, in the opinion that was just issued in December, talked at length about the Lee decision and talked about its errors and how the Lee decision, like the Poe decision, had adopted the strict compliance theory and stated at length the reasons why it was incorrect for the district court judge to do that in Lee. Okay, and the summary judgment in favor of the plaintiff here, did you ask for a reconsideration of that? No, Your Honor, what happened on the summary judgment motion was, it was the individual plaintiff only. The plaintiff had actually moved on behalf of a putative class in a very large summary judgment motion, but because district court denied the class cert, so it was just the individual plaintiff, and the court basically said that it didn't matter about intent because the court adopted the strict compliance theory because a notice of the annual right to designate a secondary designee was not sent. That was the end of the issue and granted summary judgment on that basis. So very clearly, our view is that not only a class certification order should be affirmed because the district court got it right that time, but also that the summary judgment grant in favor of plaintiff needs to be, should be reversed or vacated because the district court, well, adopted the wrong theory that time. And you're not suggesting that Your Honor titled the summary judgment because the plaintiff would be able to have an opportunity to prove under the causation? Yes. Yes, absolutely, Your Honor. And as a matter of fact, before it was, when the class certification was denied, the court had not yet rolled on the summary judgment motion, and we were very close to trial. We were only a few weeks away from trial, and all pretrial motions have been filed and witness lists and all of that when the court answered summary judgment on the individual claim. So, yes, we are not suggesting that we are entitled to summary judgment. And to address a couple of other things that were stated, the, with respect to evidence of intent, it is, of course, the plaintiff's burden, as this court held in small, to show that the policyholder did not intentionally lapse, and that's why the class cannot be certified. Setting that aside, and, of course, during all of these proceedings, plaintiff has said nothing about intent of Ms. Poe or of the punitive class members because they didn't, the plaintiff did not, their view was that it didn't matter because of the strict compliance theory. Having said that, Northwestern Mutual did adduce very significant evidence of policyholder intent, and this is set forth, it was set forth in the district court record, and it's set forth in the record on appeal. The cites to that, if the court is interested, these were all cited in our brief, but it was volume two of the excerpts of record at pages 156 to 168 was a declaration from our 30B sex witness who, at length, talked about, based upon her, based upon her experience and her review of some of the policy files and some portions of the policy files, there was clear evidence of intentional lapse with respect to a number of these punitive class members. Obviously, if these punitive class members wanted to file an individual claim, there would be a trial on that. Which evidence is that? Oh, the evidence, Your Honor, was quite extensive. It was. The declaration I just mentioned, the record cites to that, but there was supporting documentation. You said the declaration is cited to evidence. It is cited to evidence. What is specifically the kind of evidence that you're talking about? That is at volume four of the excerpts of record at pages 490 to 574, and it is documentation from the policy files, either correspondence from policy owners or their agents, or in some cases beneficiaries, or records, internal call records of communications from those people, indicating all kinds of indications of intentional lapse activity. For example, just for example, these are requests to terminate, specific requests to terminate, communications regarding an intent to terminate in the near future or surrender or to replace the policy. Indications, replica, scheduled pages is one of the exhibits that at least some of these policies had just ended the guaranteed level term period. This is a phenomenon that the small court specifically recognized in this case and used as an example of indicia, of intentional lapse, because in one of these cases, for example, the policy owner terminated the policy right before the premium was set to increase by 28-fold. So obviously the reason that the policy holder did that, I mean, it's not unrebuttable, but it seems quite clear that the reason the policy holder would do that is because they no longer, they did not want to pay the increased premium. We have many policy holders, this is, again, in this evidence, who negotiated final dividend checks from the policies. They received final dividend checks and they negotiated it. So obviously they were intentionally allowing these policies to lapse. We have indications of divorces going on, and these policy holders no longer wanted to benefit the beneficiaries who were named. That happens. And in the declaration as well, some of the policy owners who owned these class policies actually purchased other policies from Northwest for mutual at around the same time that they terminated these policies. So those are just some examples from some of these policies. Plaintiff has never said anything about this evidence. And so in addition, one more thing I would just say about that is that in the record as well, at 2SER, Supplemental Excerpts of Record at page 62, most of these alleged deaths of these insureds occur between two and eight years after the termination date. It seems very common sense, I would say, if a policy has been terminated for between two and eight years, the policy owner has gone from not paying premiums for years to paying premiums for years, excuse me, to all of a sudden not paying premiums for years. And at some point the policy owner is going to know that. That's just another example. I see I am running very short on time. I would be happy to answer any other questions that your Honors may have. Thank you. Thank you. Thank you very much. Thank you, Your Honor. Just a few quick points on rebuttal. How do we claim the intent of the dead? I mean, this is a class of beneficiaries. How would we figure that out and engage in that speculative exercise when the statutes are very clear that none of that has anything to do with it and it's just a matter of a plain language inquiry? Thomas. I don't read small. I was disagreeing with Thomas that just says that it's unpublished and it's not a detailed analysis. In theory, in this case, the breach of contract three that I've explained was grounded on Thomas from the start and shaped around it. And it was ultimately, again, not decided in small. It was not addressed. Certification to the California Supreme Court. Again, accepting we have a motion pending on that, but this is a different breach that was not addressed in small and there's little uncertainty on how to resolve or address that. We submit that certification is warranted. Compliance with the statute. Northwestern Mutual simply did not comply with these provisions from 2013 forward. The record is that they didn't start sending out policy language until 2019. Their own declarant, just referenced by my friend on the other side, said that. And even then, it's not clear that they're sending the forms that are supposed to go with it. It's a simple one-page form, even today, that they're not sending out. So if a case like this, and with class certification, is not going to bring it to heel, I'm not quite sure. But what is the issue exactly that you want certified that was not involved in small? Whether the breach occurred at the time of violation of the statutes, that's their argument, as opposed to non-payment of death benefits. That's the difference. Well, what's the harm in each case? Well, the harm in the latter case is, if the insurance contract remained in force, by virtue of the anti-lapse provisions, no notice given, contract remains in force, each side needs to perform under the contract the insurer's duty is to pay the death benefits. And in the case of this, to the extent we get into the specific record on Herklane, and this is a class case, putative, it's an inadvertent lapse. It's exactly what the statute is there for. And in terms of not being able to reinstate the policy under those circumstances or recover death benefits, I mean, really just guts with the statute is about. Now, the last point I'd make concerns the disposition here. And just to be very clear about that, we would ask the court, just given that small is not final and it's subject to an en banc petition, and we submitted that by 28-J, that the court vacate or defer submission, whatever terminology is appropriate, given the circumstances. Are there any further questions? No. Thank you very much. Thank you. The case is submitted. You're adjourned. All rise. The court for this session stands adjourned.
judges: SCHROEDER, MILLER, DESAI